UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
IRENE FERINGA,

                  Plaintiff,

      -v-                             3:19-CV-656

LOUANN ANDREWS; SHARAIN
MURPHY; AMBER HIBBARD;
STEPHANIE McEWAN; WALMART
INC.; WAL-MART STORES EAST, INC.;
WAL-MART STORES EAST, LP;
WAL-MART ASSOCIATES, INC.; and
JOHN DOES 1-10,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

SHEGERIAN & ASSOCIATES      JON CHOATE, ESQ.
Attorneys for Plaintiff
90 Broad Street Suite 804
New York, New York 10004

LITTLER, MENDELSON LAW FIRM   HINNA M. UPAL, ESQ.
   FAIRPORT, NEW YORK OFFICE   PAMELA S.C. REYNOLDS, ESQ.
Attorneys for Defendants
375 Woodcliff Drive, 2nd Floor
Fairport, New York 14450

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

# I. INTRODUCTION

On August 21, 2018, plaintiff Irene Feringa ("plaintiff" or "Feringa") lost her job at a Walmart store in Johnson City, New York (the "store"). Who exactly employed plaintiff is still a contentious topic, but at the least the parties agree that it was one of three of the entity defendants in this case's caption: Walmart Inc.; Wal-Mart Stores East, LP; or Wal-Mart Associates, Inc. (together "Walmart" or "defendant").[1]

On June 3, 2019, Feringa filed an eleven-count complaint in this district: (I) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); (II) Family and Medical Leave Act ("FMLA") interference in violation of 29 U.S.C. § 2614(a)(1)(A) and 2615(a)(1); (III) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a); (IV) retaliation in violation of the ADA, 42 U.S.C. § 12203(a); (V) disability discrimination in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296.1(a); (VI) age discrimination in violation of the same provision of the NYSHRL; (VII) a hostile work environment claim under the NYSHRL for discrimination based on disability, age, and leave; (VIII) Retaliation under the NYSHRL,

---

[1] Plaintiff initially alleged in her complaint that the fourth entity defendant, Wal-Mart Stores, East, Inc., employed her as well, but as will be discussed below she has since disavowed that claim.

N.Y. EXEC. LAW § 296.1(e) and 296.7; (IX) aiding and abetting forbidden acts under the NYSHRL in violation of N.Y. EXEC. LAW § 296.6; (X) negligent hiring, supervision, and retention of employees under the New York common law; and (XI) intentional infliction of emotional distress under the New York common law.

The complaint also listed a handful of individual defendants who supervised Feringa during her time at Walmart: LouAnn Andrews ("Andrews"); Sharain Murphy; Amber Hibbard; and Stephanie McEwan ("McEwan"), not to mention several John Does.  On December 30, 2020, the individual defendants, as well as Wal-Mart Stores, East, Inc., and Walmart, moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56 against the entirety of plaintiff's complaint.  Those motions, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. **BACKGROUND**

On August 6, 2010, Feringa was hired to work at the Walmart store in Johnson City, New York.[2]  Dkt. 72-4, Defendants' Statement of Material Facts ("DSMF") ¶ 1.  According to Walmart, Walmart Stores East, LP was plaintiff's employer at all times relevant to this case.  *Id.* ¶ 2.  As plaintiff

---

[2] The facts are taken from defendant's statement of material facts where admitted by plaintiff, or from other record evidence.  Disputed facts are flagged and supported by citations to either the proponent's statement of material facts or to record evidence.

points out, though, her wage notices identified her employer as Wal-Mart Stores, Inc., and her tax documents listed her employer as Wal-Mart Associates, Inc.  Dkts. 77-18, p. 1;[3] 77-19, p. 2.

Feringa spent her time at Walmart as a Sales Associate in the deli department.  DMSF ¶ 3.  That role involved customer service, stocking shelves, and generally keeping the deli section of the store fresh, clean, and supplied.  *Id.* ¶ 5.

Throughout Feringa's entire Walmart career, she lived with chronic obstructive pulmonary disease ("COPD").  DSMF ¶ 15.  As its name suggests, COPD affects a person's lungs and thus can make breathing difficult.  *Id.* Although the specifics are scant, plaintiff told at least some Walmart employees that she suffered from COPD within her first few days of work. *Id.* ¶ 17.

Feringa remained employed at Walmart without any glaring issues relevant to this case until December of 2016.  In that month, plaintiff requested a leave of absence under the FMLA.  DSMF ¶ 18.  Apparently, plaintiff's doctor had told her that something was wrong with her lungs, and she would need to be excused from work for treatment.  *Id.* ¶¶ 18, 20.

---

[3] Pagination Corresponds with CM/ECF.

Accordingly, Feringa requested a leave of absence from Sedgwick, an outside company to which Walmart outsourced employee accommodation requests. DSMF ¶¶ 18, 23. Sedgwick granted plaintiff's accommodation request, and granted her a leave of absence from December 1 through December 7. *Id.* ¶¶ 19, 23; Dkt. 72-2, p. 124. Fortunately, plaintiff recovered quickly, and on December 8, 2016 she returned to work with no restrictions. DSMF ¶ 20.

Yet that would not be the last time Feringa would request accommodations for her COPD. In May of 2018, plaintiff requested that Walmart minimize the amount of bending she would be asked to do during the workday and restrict the amount of weight she could be required to lift to nine pounds or fewer beginning on May 3, 2018 and ending on May 31, 2018. DSMF ¶ 22. Sedgwick determined that plaintiff's job absolutely required her to do everything that she was asking not to do, and denied her accommodation request as a result. *Id.* ¶ 23. As an apparently unrequested alternative, Sedgwick approved plaintiff to take a leave of absence from May 9, 2018 until June 1, 2018. *Id.* ¶ 24.

Feringa once again returned from her leave of absence with no restrictions. DSMF ¶ 25. However, at some point plaintiff spoke to the store's Personnel Coordinator, defendant Andrews, about her breathing problems. *Id.* ¶ 26. Rather than parking in the designated employee lot

5

some distance away, plaintiff wanted to be able to park in the much closer customer lot.  *Id.* ¶¶ 26-27.

The Store Manager, the store's ranking employee, approved Feringa's request to park closer to the building without asking for medical documentation.  *See* DSMF ¶ 27.  Even so, apparently another store employee left a note on plaintiff's windshield telling her she could not park in the customer lot.  *Id.* ¶ 28.  In response, plaintiff sought out and provided paperwork signed by her doctor that restored her permission to use the closer lot.  *Id.*

Also in 2018, Feringa asked the assistant manager to whom she reported, defendant McEwan, for an accommodation that would relieve her from having to work the fryers that Walmart had set up in the deli section. DSMF ¶ 29.  According to McEwan, plaintiff said that she had asthma, but she cannot recall whether plaintiff elaborated how the fryers would make her asthma worse.  Dkt. 72-2, pp. 185-86.  McEwan apparently told plaintiff to get an accommodation form from Andrews, fill it out, and send it to the home office.  *Id.* at 186.  Plaintiff never did.  DSMF ¶ 30.  Nevertheless, another of plaintiff's managers allowed her to work away from the fryers if they became so smoky that they would interfere with her breathing.  *Id.* ¶ 31.

In the background of Feringa's breathing-induced hardships—and according to her in part because of them—plaintiff had some difficulties

getting to and staying at work during 2018.  Obviously, frequent absence

from work is seldom a healthy sign for an employment relationship, but in

this particular case Walmart's attendance policies lent additional gravitas to

her lapses in attendance.

   More specifically, during the late stages of plaintiff's employment,

Walmart used an "occurrence" system to track employee punctuality.

Dkt. 77-8, p. 2.  Think of "occurrences" as points, with various attendance

problems counting for a different number of occurrence points.  *Id.*  For

example, arriving at work late or leaving early counts for a half point, while

calling in sick for an unauthorized reason counts for a full point.  *Id.*  When

an employee accumulates nine or more occurrence points within a rolling

six-month period, the employee is subject to termination.  *Id.*

   On February 14, 2018, plaintiff left work more than two hours early.

Dkt. 77-10, p. 1 (noting plaintiff's attendance on February 14 as "absent early

out"); *see* Dkt. 77-8, p. 4 (noting that absent early out means employee

clocked out more than two hours before end of shift).  According to Walmart's

occurrence system, leaving this early generally counts for one full occurrence

point.  Dkt. 77-8, p. 4.  On February 21, 2018, plaintiff left work early again,

although within two hours of the end of her shift.  Dkt. 77-10, p. 1.  Because

plaintiff left within two hours of her shift's end, it should only have qualified for a half-point occurrence.[4]  Dkt. 77-8, p. 4.

Feringa was absent from her shift altogether on February 24 and 25, and she did not call in before her shift to let anyone at the store know. Dkt. 77-10, p. 1.  Typically, an absence without so much as a call in counts for four total occurrence points against the employee: one point for being absent, and three for failing to report it ahead of time.  Dkt. 77-8, p. 3.  For these two days alone, plaintiff would have received eight occurrence points, bringing her total for February to 9.5 occurrence points when her two early departures are included.

Concerned about losing her job, Feringa went to McEwan to ask about removing the occurrence points from February 24 and 25.  DSMF ¶ 55. According to plaintiff, she had failed to show up to work and call in because her husband was in the hospital over those two days.  *Id.*  McEwan removed the occurrence penalties for plaintiff failing to call in, but left her one point occurrences for her absences in place.  *See* DSMF ¶ 57(noting that McEwan removed plaintiff's two three-point occurrences); Dkt. 77-1, Plaintiff's Statement of Material Facts ("PSMF"), ¶ 55 (pointing out that plaintiff still

---

[4] None of the occurrence points plaintiff accumulated in February are reflected in Walmart's records, apparently because by the time it ran its attendance tracking report on plaintiff on August 29, 2018, all of plaintiff's absences predating that report by six months had timed out.  *See* Dkt. 77-10, p. 1.

received two one-point occurrences for this timeframe); Dkt. 77-8, p. 3 (establishing that failing to call or appear for work counts as two absence events totaling four points).

Thus, Feringa was again safely below nine occurrence points.  However, that tally took precious little time to grow.  Plaintiff again was absent on March 3.  Dkt. 77-10, p. 1.  Plaintiff attributes her absence to a severe winter storm making it impossible for her to get to work.  Dkt. 77-2 ("Pl. Aff."), ¶ 2. That one-point occurrence brought her occurrence score up to 4.5.

According to Andrew Schwanke ("Schwanke"), a Walmart representative, there are times when an employee's absence for a catastrophic weather event can be treated as an authorized absence, which does not incur an occurrence point.  Dkt. 77-5 ("Schwanke Dep."), pp. 2-3, 19-20.  Typically, though, that would usually only apply to employees who relied on public transportation. *Id.*  In any case, a manager has discretion to consider whether an emergency-related absence should be classified authorized or not, and managers do not frequently authorize absences for weather.  *Id.* at 20-21, 23.

On March 13, 2018, Feringa again missed work.  Dkt. 77-10, p. 2.  This counted as a full point occurrence, bringing her total to 5.5.  *Id.*  Plaintiff was also late to work on April 23, 2018, which added another half point and brought her up to an even six points.  *Id.*  On June 18 and July 2, 2018,

plaintiff again called in sick and missed work both days, racking up another two points for eight total occurrence points.  *Id.*

On July 10, Feringa again left work early, nudging her point total to 8.5. Dkt. 72-2, p. 137.  Plaintiff again left more than two hours early on July 18, 2018, which counted for a full occurrence point and brought her above nine points to 9.5.  *Id.*  Plaintiff would call in sick on July 23, 28, and August 8, 2018, giving her a total of 12.5 occurrence points after August 8.  *Id.*

Feringa would call in from work a final time on August 15, 2018. DSMF ¶ 90.  She did not provide a reason for calling in.  *Id.* ¶ 91.  According to plaintiff, however, she called in because a severe rainstorm had flooded several roads, once again making it impossible for her to get to work. PSMF ¶ 122.

In the background of Feringa's growing list of absences, Walmart's policy was not to warn associates when they were approaching the terminable nine occurrence points.  DSMF ¶ 49.  However, as Schwanke testified at deposition, before an assistant manager terminates an employee, she "should have a discussion or review with that associate in a disciplinary session that could lead to termination."  Schwanke Dep. 15.  Schwanke further suggested that "if there [are] no reasons" that an employee provides to excuse her absences at that "attendance review session," termination should follow.  *Id.*

That session should typically occur before the session in which the plaintiff is terminated.  *Id.* at 33.

McEwan met with Feringa for a termination meeting on August 21, 2018. DSMF ¶ 99.  Before that meeting, the only conversation she remembered having with plaintiff about absences was when plaintiff asked for a reduction in her occurrence points for her husband's hospital stay.  Dkt. 77-7 ("McEwan Dep."), pp. 3-4.  Nevertheless, and despite it being Walmart's apparent policy to have a disciplinary session prior to termination, plaintiff was told that she was being terminated for her excessive absences.  DSMF ¶ 100.  Her termination took effect that same day.  *Id.* ¶ 103.

Feringa did not explain any of her absences as relating to her COPD, and she did not ask for any of her absences to be authorized.  DSMF ¶ 101. According to plaintiff, though, all of her absences not caused by natural disasters were caused by her COPD.  Pl. Aff. ¶ 4.  In fact, Walmart's records reflect that she listed illness/injury as the cause of six of her absences between March 13, 2018 and August 8, 2018.  Dkt. 77-10, p. 2.  Plaintiff further claims that she told a manager every time she returned to work following an absence that she had missed work due to her breathing problems.  Pl. Aff. ¶ 5.

Feringa claims that she did not mention it to McEwan because she did not believe that her COPD made her eligible for an authorized absence unless

she took a full leave of absence as an accommodation.[5]  PSMF ¶ 111.  She

also contends that she was not given an opportunity to explain any of her

absences, nor had McEwan asked what had caused them.  *Id.* ¶¶ 112-14.

However, at the close of the termination meeting, McEwan did explain to

Feringa that Walmart employs an Open Door policy.  McEwan Dep. 11.

According to McEwan, that policy allows an employee to speak to a manager

or higher ranked employee to petition them to make or change a decision

about the store's environment.  *Id.* at 12.  In other words, plaintiff could have

spoken to one of McEwan's supervisors to request that her employment be

restored.  *Id.*  She did not.  DSMF ¶ 102.  All told, plaintiff was one of

fifty-eight Walmart employees fired from that store for a breach of the

attendance policy between January 1, 2017 and August 21, 2018.  *Id.* ¶ 104.

Feringa filed her complaint alleging a bevy of discrimination claims on

June 3, 2019.  Dkt. 1.  Defendants moved for summary judgment in their

favor on December 30, 2020.  Dkts. 72; 73.  On January 27, 2021, plaintiff

responded, forsaking all of her claims against the individual

defendants: Andrews; McEwan; Sharain Murphy; and Amber Hibbard, as

well as all of her claims against Wal-Mart Stores, East, Inc.  Dkt. 77, p. 14.

Plaintiff also affirmatively disavowed all of her claims except for Counts:

---

[5] Defendants dispute that plaintiff did not know that her COPD would entitle her to authorized absences.

(I) disability discrimination in violation of the ADA; and (V) disability discrimination under the NYSHRL against Walmart.  The Court must therefore grant summary judgment in defendants' favor as to the individual defendants and Wal-Mart Stores, East, Inc., generally and on those claims against Walmart.  Whether the same fate must befall plaintiff's claims under Counts I and V against Walmart remains an open question.

## III.  <u>LEGAL STANDARD</u>

Summary judgment under Rule 56 is warranted if the entirety of the parties' submissions show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing FED. R. CIV. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The movant bears the burden of pointing the court to the materials that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Additionally, a court considering a summary judgment motion "must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party."  *Ward v. Stewart*, 286 F. Supp. 3d 321,

327 (N.D.N.Y. 2017) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).  Even so, a non-movant's conclusory allegations without support from record evidence are insufficient: the non-movant must "put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  At bottom, summary judgment tasks the Court with assessing the assembled evidence and determining whether a reasonable factfinder could find in the nonmovant's favor.  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

## IV. <u>DISCUSSION</u>

The remaining portion of Walmart's motion for summary judgment raises two questions.  First, whether all of the remaining Walmart defendants are properly defendants before this Court.  And second, whether Feringa's remaining claims can survive.

### A. <u>Propriety of the Walmart Defendants</u>

Walmart contends that Wal-Mart Stores East, LP, was Feringa's only employer while she worked at the store.  Plaintiff disagrees, relying on the joint employer doctrine to keep her claims against all three Walmart defendants alive.  In a joint employer relationship, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of

14

employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."[6] *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).

The test for a joint employer relationship turns on whether there is sufficient evidence that both employers had immediate control over each other's employees. *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994) (per curiam). The relevant factors to assess that immediate control include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Id.*

In support of her theory of a joint employer relationship among all three Walmart entities, Feringa points to her wage notices and tax records, which indicate that Wal-Mart Associates, Inc. and Wal-Mart Stores, Inc. also had control over her conditions of employment, especially in terms of control over her records and pay. Dkts. 77-18, p. 1 (tax records listing Wal-Mart Associates, Inc. as plaintiff's employer); 77-19, p. 2 (wage statement listing Wal-Mart Stores, Inc. as plaintiff's employer).

Control over records and employee pay are both essential factors to the joint employer analysis, and thus there is a classic dispute of material fact as to whether Wal-Mart Associates, Inc., Wal-Mart Stores, Inc., and Walmart

---

[6] Courts in this district apply the same test to claims under the NYSHRL. *See, e.g.*, *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 322-23 (S.D.N.Y. 2020) (applying joint employer doctrine unilaterally to Title VII and NYSHRL claims in same manner described above for ADA claims).

Stores East, LP were joint employers.  *See NLRB*, 38 F.3d at 94 (including control over records and pay as elements of joint employer test).  Accordingly, defendants' motion for summary judgment must be denied.

**B. <u>Disability Discrimination and Failure to Accommodate Claims</u>**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability . . . ."  42 U.S.C. § 12112(a).  As is often the case with statutes protecting against employment discrimination, summary judgment motions relating to the ADA are considered through the burden-shifting framework the Supreme Court laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[7]  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (applying framework to ADA discrimination claim).

*McDonnell Douglas* analysis comes in three stages with three distinct burdens of proof.  First, the plaintiff must present evidence to support a prima facie claim.  *McDonnell Douglas*, 411 U.S. at 802.  Second, if she succeeds in carrying her initial burden, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its actions.  *Id.*  Third, if the defendant carries its burden, the final burden is on the plaintiff

---

[7] Plaintiff's NYSHRL claims are examined under much the same standard.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000).

to provide evidence that her employer's proffered nondiscriminatory reason was pretextual.  *Id.* at 804.

Concerning Feringa's prima facie case, there are two species of ADA discrimination claim that she attempts to advance: classic discrimination and failure to accommodate.  For either claim, plaintiff must prove that: (1) her employer is subject to the ADA; (2) she was disabled as the ADA defines that term; and (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation.  *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020).

A plaintiff's prima facie case for ADA discrimination and failure to accommodate claims each also have a fourth element, but that fourth element differs between the two styles of claim.  Because Walmart has attacked the common third element of Feringa's qualifications to perform her job with or without reasonable accommodation for both her discrimination and her failure to accommodate claims, the Court will tackle the common third element first.  If plaintiff's claims still stand after that scrutiny, the Court will then turn to the individualized fourth and final element of each claim's prima facie case.

Concerning Feringa's qualifications to perform the essential functions of her job as a deli associate, Walmart argues that plaintiff's excessive absences render her unqualified and defeat her claim.  In rebutting that argument,

plaintiff bears the burden of both production and persuasion "as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment." *McMillan v. City of N.Y.*, 711 F.3d 120, 126 (2d Cir. 2013).  Although it is often the case that presence during specific hours is an essential function of a job, the mere fact that an employee cannot abide by an employer's schedule is not by itself enough to render the employee unqualified to perform the essential functions of her job. *Id.* at 126-27 (reversing grant of summary judgment where district court solely relied on plaintiff's inability to adhere to schedule to declare plaintiff per se unqualified).

Although Walmart is certainly correct that attendance at work is an essential function of Feringa's job, she has nevertheless made a sufficient showing to raise a jury question as to whether her absences were so pronounced as to render her unqualified.

Feringa's absences were not constant, nor were they chronic.  To be sure, they were more frequent than Walmart would have permitted for a non-disabled employee, but they were not so frequent as to amount to her being unqualified for her position as a matter of law.  In fact, Walmart's own attendance policies evince this, because those policies explicitly allow for a disabled employee to have absences excused—and thus not counted as occurrences—as an accommodation for her disability.  Dkt. 77-8, p. 2 (noting

that "reasonable accommodation" qualifies as authorized absence).  As a result, a reasonable juror could conclude that the occasional authorized absence for plaintiff's COPD would be a reasonable accommodation that would make plaintiff qualified to perform the essential functions of her job. *See McMillan*, 711 F.3d at 127 (holding that "reasonable juror could find that arriving [at work at] specific time was not" essential function).

Walmart nevertheless cites to several cases that it claims reach the opposite conclusion, but those cases all involved disabilities so severe that they necessitated extended leaves of absence, not periodic missed days due to illness.  For example, in *Frantti v. New York*, this Court found the plaintiff incapable of performing his job with or without accommodation because he left work in January of 2016 and did not return until he resigned on July 11, 2016.  414 F. Supp. 3d 257, 281-82 (N.D.N.Y. 2019).  Similarly, the plaintiff in *Davis v. Bowes* was absent from work for a full six months prior to experiencing the discriminatory acts of which she complained. 1997 WL 655935, at *16 (Oct. 20, 1997).

All that is to say that while it is of course true that an ability to be present at work *at all* can make a person unqualified for their job,  *Bowes*, 1997 WL 655935, at *16, and it is also true that the ADA does not require employers to tolerate chronic absenteeism, *Lewis v. N.Y. City Police Dep't*,

908 F. Supp. 2d 313, 327 (E.D.N.Y. 2012), this case does not run afoul of either principle.

Of course, it is possible that authorizing Feringa's absences would have involved undue hardship, in which case that accommodation would not have been reasonable. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 221 (2d Cir. 2001) (noting that defendant can escape liability by proving that accommodating plaintiff would involve undue hardship).

To prove that hardship, Walmart could have supplied evidence and testimony to rebut the reasonableness of Feringa's request for authorized absences as an accommodation.  It could have pointed to the hardship to its managers and plaintiff's coworkers caused by the uncertainty of her schedule. But Walmart provided no such evidence, and instead relied only on the abstract principle that attendance is an essential function of employment. That cannot be enough, especially not when Walmart facially recognizes that plaintiff's request for her absences to be authorized can constitute a reasonable accommodation.  *See McMillan*, 711 F.3d at 126-27; Dkt. 77-8, p. 2.

On the other hand, Feringa has provided evidence that she apparently worked in her role as a deli associate up until the time of her termination. DSMF ¶ 103.  Walmart has in no way attacked her ability to work in that role due to her COPD, and plaintiff has therefore adequately proven the third

element of her disability discrimination claim under either theory she advances.  Because Walmart's attack on plaintiff's qualifications to perform her job with reasonable accommodation has failed as to both her discrimination and failure to accommodate claims, the Court will address the fourth element for her prima facie discrimination and failure to accommodate claims individually.

## 1. **Discrimination**

For a discrimination claim, the fourth element of a prima facie case requires the plaintiff to prove that she "suffered [an] adverse employment action because of h[er] disability."  *Woolf*, 949 F.3d at 93.

An "adverse employment action" must be causally connected to the plaintiff's disability, which means the plaintiff must show that the action "took place under circumstances giving rise to an inference of discrimination." *Davis v. N.Y. City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  The plaintiff must ultimately prove that her disability was the but-for cause of her adverse employment action.  *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir. 2019).

Walmart principally  argues that Feringa has failed to prove that the act of discrimination she alleges—namely her termination—was caused by her

disability.[8]  That argument must be rejected.  According to plaintiff, several of her absences were caused by her COPD, and her absences unquestionably caused her termination.  Pl. Aff. ¶ 4; DSMF ¶ 100.  Cause and effect does not get much more straightforward than that.  Thus, plaintiff has met her first burden and established a prima facie case of discrimination under the ADA and NYSHRL.

As Walmart correctly notes, however, it has itself carried its burden at the second stage of the *McDonnell Douglas* analysis by supplying a legitimate, nondiscriminatory reason for letting plaintiff go.  411 U.S. at 802.  More specifically, Walmart has pointed to an attendance policy that it uniformly employs and upon which plaintiff ran aground.  Dkt. 77-8, pp. 2-3.  Walmart of course has every right to terminate employees in accordance with its attendance policies, and the Court is satisfied that this evidence carries Walmart's burden.

Accordingly, Walmart's motion ultimately turns on whether Feringa has adequately proven pretext.  The question is a close one.  In Walmart's favor, within a rough two-year period prior to plaintiff's termination, it terminated fifty-seven similarly situated employees at the same store plaintiff worked in

---

[8] The parties do not dispute that a termination is an adverse employment action.

for violations of the same policy.  DSMF ¶ 104.  That consistent deployment of the policy plaintiff ran into provides substantial evidence of legitimacy.

In turn, Feringa has two arguments that she relies on to prove pretext. First, plaintiff points to the fact that she was never given an opportunity to explain her absences prior to being terminated.  DSMF ¶ 101; PSMF ¶¶ 112-14.  In a vacuum, that is not necessarily evidence of pretext, but the unique circumstances of this case give the Court pause.  Apparently, it is Walmart's policy to have a meeting to give an employee an opportunity to explain her absences, but plaintiff was not given any such meeting. Schwanke Dep. 15, PSMF ¶¶ 112-14.  A reasonable jury could therefore conclude that McEwan anticipated that plaintiff would pin at least some of her absences on her breathing problems and decided to cut her opportunity to do so out at the knees.

That argument may seem to have a somewhat speculative flavor to it, but in this case that speculation is not as wild as it would otherwise be.  To begin, McEwan was clearly aware that Feringa's breathing problems might have had a hand in her absences, because plaintiff had told her about them in the context of needing an accommodation.  DSMF ¶ 29.  Andrews and the Store Manager similarly had notice of plaintiff's difficulty breathing through her request to park at the customer lot.  DSMF ¶¶ 26-28.  And once again,

Walmart allows absences to be authorized as a reasonable accommodation. Dkt. 77-8, p. 2.

Under these facts, a jury would be within its rights to determine that Feringa was denied her attendance review meeting because her employer anticipated that her breathing problems, which amounted to a disability and which her managers knew about, caused her absences.  If plaintiff had been given her attendance review meeting and had identified her COPD as the cause of her absences, it would have become much more difficult to justify firing plaintiff instead of authorizing those absences based on her disability, which by Walmart's policies would be at least one of the proper methods of resolving them.  Dkt. 77-8, p. 2.  A reasonable juror could conclude based on those evidentiary inferences that Walmart did not want to have to accommodate plaintiff's absences, so it denied her the opportunity to justify them.

Second, Feringa can relatedly argue that because Walmart had been put on notice of her breathing difficulties and had accommodated her in the past, Walmart failed in its obligation to engage in an interactive process with her to come up with a reasonable accommodation.  To that end, if an employee proposes an accommodation, employer and employee are supposed to engage in an "interactive process" together to determine whether the employee's disability could be reasonably accommodated, and how that accommodation

could be managed. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135
(2d Cir. 2008).

Although an employer's failure to participate in that process does not by
itself present a plaintiff with a claim, it is nevertheless evidence of disability
discrimination. *Sheng v. M&TBank Corp.*, 848 F.3d 78, 86-87 (2d Cir. 2017).
However, courts routinely note that identifying the cause of a breakdown in
the interactive process is usually a "fact-sensitive and case-by-case inquiry
into the good faith and reasonable efforts of the parties in light of the
complete set of circumstances." *Quadir v. N.Y. State Dep't of Labor*,
39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014).

In a nutshell, then, if Feringa can successfully prove that it was Walmart's
fault that the accommodation process broke down, that would also provide
evidence that it discriminated against her on the basis of disability.
Conversely, if Walmart can prove that plaintiff abdicated her responsibility
to participate in the interactive process, that would undermine plaintiff's
hopes of sustaining her discrimination claim.

Both parties have evidence to support their theory. In Walmart's favor, it
correctly notes that Feringa clearly knew how the accommodation process
worked, because she had successfully requested accommodations for her
COPD before. DSMF ¶ 18 (plaintiff taking COPD leave of absence in
December of 2016); *see also id.* ¶¶ 22-24 (plaintiff requesting weight and

bending restrictions and being given leave of absence from May 9, 2018 until June 1, 2018).

Feringa also clearly understood that she had an obligation to monitor her absence occurrences, and had previously requested that they be reduced when she thought she had a qualifying reason.  DSMF ¶¶ 55, 57 (plaintiff notifying McEwan that she had needed to be absent because her husband was in the hospital and McEwan reducing her occurrence points accordingly). That evidence would suggest that plaintiff knew that her occurrence points were over the permitted limit, knew how to talk to her managers to reduce those points, knew how to otherwise ask for accommodations for her COPD, and still simply allowed those numbers to sit, giving Walmart license to terminate her.

On the other hand, McEwan's failure to have a meeting with Feringa to give her an opportunity to discuss her absences could also be read to reflect Walmart abdicating its responsibility to engage in an interactive accommodation process.  DSMF ¶ 101; PSMF ¶¶ 112-14.  If a jury were to find that Walmart failed to give plaintiff a chance to explain her absences and cut to silence on any possibility of negotiating a means of accommodating her, that jury could justifiably come to the conclusion that Walmart used its policy as an excuse to terminate her when in actuality it did not want to try to find a way to work around plaintiff's COPD.  In further support of

Walmart's culpability for the breakdown in the interactive process is plaintiff's claim that she told her managers that her COPD was causing her absences.  Pl. Aff. ¶ 5.  Plaintiff also attempts to mitigate her own culpability by claiming that she simply did not know that her COPD-related absences could be authorized as an accommodation.  *Id.* ¶ 6.

A reasonable juror could conclude that Walmart's complete silence and denial of any opportunity to actually explain Feringa's absences was a greater failing than her failures to be more direct about looking for a way to manage her COPD.  Or a juror could find that plaintiff's foreknowledge about how Walmart's attendance and accommodation policies worked make plaintiff the culpable one.  Because a reasonable juror could conclude in either party's favor on the issue of the breakdown in the interactive process, it is not the Court's place to make an affirmative ruling.  But it does not need to.  Rather, the fact that a jury *could* consider Walmart culpable for the interactive process breaking down means that a jury similarly could find even more support for plaintiff than the record allows at this moment.

All together, the combination of Walmart's denying Feringa a meeting to explain her absences and its potential culpability in the breakdown of the interactive process would allow a reasonable jury to conclude that its attendance policy was used pretextually to avoid working with plaintiff to come up with an accommodation.  Plaintiff has therefore met her final

27

burden in the *McDonnell Douglas* framework, and Walmart's motion for summary judgment must be denied.

### 2. <u>Failure to Accommodate</u>

To a certain extent, Feringa's success in sustaining her discrimination claims bleeds over to bolster her failure to accommodate claims.  Remember, the first three elements of both claims are the same, so only the fourth element of plaintiff's failure to accommodate claim remains for examination. *Woolf*, 949 F.3d at 93.  To the point, a failure to accommodate plaintiff must prove, predictably, that the employer refused to make a reasonable accommodation for the plaintiff's disability.  *Id.*

A reasonable accommodation includes "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position[.]"  29 C.F.R. § 1630.2(o)(1)(ii).

But keep in mind that an employer need not accommodate a plaintiff if it can prove that her accommodation requests would impose an undue hardship. *See Lovejoy-Wilson*, 263 F.3d at 221.  Accordingly, an accommodation need not be perfect, or exactly what plaintiff was looking for, nor can it eliminate an essential function of a job.  *Frantti*, 414 F. Supp. 3d at 286.

Feringa alleges that Walmart failed to accommodate her by classifying at least some of her COPD-related absences as "authorized" and therefore not charging her an occurrence point. *See* PSMF ¶ 116 (noting that "Walmart allows . . . managers . . . to authorize absences as a reasonable accommodation"). Because plaintiff has evidence both that her COPD caused some of her absences and that those absences were never classified as authorized, she has successfully established a prima facie case for her failure to accommodate claims. Pl. Aff. ¶ 4; Dkt. 72-2, pp. 185-86.

Of course, Walmart has nevertheless once again adequately proven a nondiscriminatory reason for not deeming Feringa's absences authorized. Namely, Walmart has correctly pointed out that plaintiff never actually *asked* for her COPD-related absences to be authorized, or even told Walmart that her COPD caused those absences in the first place. DSMF ¶ 101. Especially because plaintiff had previously demonstrated a working knowledge of how to get an absence excused, that evidence satisfies defendant's burden of a nondiscriminatory basis for its conduct. *Id.* ¶ 57; Dkt. 77-10, p. 1 (demonstrating "no call" occurrence points for plaintiff's absences relating to her husband's hospital stay being removed).

To prove pretext Feringa again relies on Walmart's failure to ever ask her why she was absent, even though she flagged her absences as caused by illness. Pl. Aff. ¶ 4; Dkt. 77-10, p. 2 (noting that plaintiff listed illness/injury

as cause for absence for six absences between March 13, 2018 and August 8, 2018).  She also claims that she told a manager every time that she returned to work from an illness-caused absence that her COPD was to blame. Pl. Aff. ¶ 5.  In other words, she argues that Walmart had notice that her disability was the root of the problem and did nothing to address that with her.

If this debate looks an awful lot like the disputes concerning the parties' relative culpability for the breakdown in the interactive process above, that is because it is.  After all, many courts in this district, including the Second Circuit (albeit in a non-binding summary order), have held that a plaintiff cannot recover on a failure to accommodate claim if she herself was responsible for a breakdown in the interactive process.  *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008).[9] Accordingly, Feringa's culpability relative to Walmart in the breakdown of the interactive process is an essential question in resolving plaintiff's failure to accommodate claims.

And so, the parties each point the finger at the other and ask the Court to decide whether Feringa did enough to put Walmart on notice that she was in need of accommodation.  Once again, the Court is not equipped to resolve

---

[9] Courts have held the same for the NYSHRL.  *Strong v. Fernandez*, 133 N.Y.S.3d 377, 380-81 (Sup. Ct. 4th Dep't 2020).

that question on summary judgment.  Such a "fact-sensitive" inquiry is properly the province of the jury, and Walmart's motion for summary judgment must be denied as to plaintiff's failure to accommodate claims as well.  *See, e.g.*, *Quadir*, 39 F. Supp. 3d at 540.

## V. <u>CONCLUSION</u>

At the end of the day, the parties' disputes in this case boil down to an argument so classic that the word "trope" does not adequately capture its well-worn track.  Walmart sounds a resolute "you never told me."  Feringa retorts "you never asked."  The dispute may be a minor one.  But the question of whether plaintiff or Walmart should bear the cost of their mutual breakdown in communication is not one that the Court can resolve on the papers.  Accordingly, Walmart's motion for summary judgment must be denied to the extent it sought dismissal of plaintiff's ADA and NYSHRL disability discrimination and failure to accommodate claims.  However, the remaining defendants—as well as all of plaintiff's other claims against Walmart—must be dismissed, as plaintiff herself acknowledges.

Therefore, it is

ORDERED that

1. The summary judgment motions of defendants LouAnn Andrews, Sharain Murphy, Amber Hibbard, Stephanie McEwan, John Does 1-10, and Walmart Stores East, Inc, are GRANTED;

2.  Defendants LouAnn Andrews, Sharain Murphy, Amber Hibbard, Stephanie McEwan, John Does 1-10, and Walmart Stores East, Inc, are DISMISSED;

3.  The summary judgment motions of defendants Wal-Mart Inc., Wal-Mart Stores East, LP, and Wal-Mart Associates, Inc. are GRANTED IN PART and DENIED IN PART;

4.  Plaintiff Irene Feringa's claims under Counts: (II) FMLA discrimination; (III) age discrimination under the Age Discrimination in Employment Act; (IV) ADA retaliation; (VI) age discrimination under the NYSHRL; (VII) hostile work environment under the NYSHRL; (VIII) NYSHRL retaliation; (IX) aiding and abetting forbidden acts under the NYSHRL; (X) negligent hiring, supervision, and retention of employees; and (XI) intentional infliction of emotional distress, are DISMISSED; and

5.  Plaintiff Irene Feringa's claims under Counts: (I) ADA discrimination; and (V) disability discrimination under the NYSHRL against defendants Wal-Mart Inc., Wal-Mart Stores East, LP, and Wal-Mart Associates, Inc. survive for trial.

IT IS SO ORDERED.

Dated:  May 20, 2021
  Utica, New York.

David N. Hurd
U.S. District Judge